UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDULAI SOW,

                Petitioner,

    v.

MARKWAYNE MULLIN et al.,

                Respondents.

CASE NO. 2:26-cv-00617-LK

ORDER GRANTING IN PART AND
DENYING IN PART PETITION FOR WRIT
OF HABEAS CORPUS

This matter comes before the Court on Abdulai Sow's Petition for Writ of Habeas Corpus. Dkt. No. 4. For the reasons stated below, the Court grants in part and denies in part the petition.[1]

## I.    BACKGROUND

Sow "is a citizen of Sierra Leone who was paroled into the United States on or about June 29, 2008 as an asylee." Dkt. No. 10 at 1. He was 10 years old at the time. Dkt. No. 4 at 2. He was admitted as a legal permanent resident "as of April 4, 2010." Dkt. No. 10. at 1. On March 3, 2021, Immigration and Customs Enforcement ("ICE") issued him a Notice to Appear charging him as removable under sections 237(a)(2)(A)(iii) and 237(a)(2)(A)(ii) of the Immigration and

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

Nationality Act ("INA") (8 U.S.C. § 1227(a)(2)(A)(ii)–(iii)) "for being convicted of two different aggravated felonies and two crimes of moral turpitude." *Id.* at 3. He "was taken into ICE custody on or about June 4, 2021, upon his release from state prison." *Id.*

On August 18, 2021, Sow "had a merits hearing on his application for asylum, withholding of removal, and protection under the Convention Against Torture, Form I-589," where "[a]ll relief was denied and [he] was ordered removed to Sierra Leone." *Id.* Sow filed an appeal to the Board of Immigration Appeals ("BIA"), which was dismissed on December 29, 2021. *Id.*

On September 8, 2022, Sow was removed to Sierra Leone via commercial flight. *Id.* On September 18, 2023, he "was apprehended by United States Border Patrol officers shortly after unlawfully entering the United States without inspection" and claimed fear of return to Sierra Leone. *Id.* The United States Border Patrol processed him "for reinstatement of his prior removal order" and held him "in DHS custody pending a reasonable fear determination[.]" *Id.*

On October 12, 2023, "a positive reasonable fear determination" was made regarding Sow's removal to Sierra Leone. *Id.* at 3–4. His merits hearing on his application for withholding of removal and protection under the Convention Against Torture ("CAT") occurred on February 29, 2024, where he was denied withholding of removal but granted deferral of removal under the Convention Against Torture. Dkt. No. 4-1 at 14. The Department of Homeland Security ("DHS") appealed to the BIA. Dkt. No. 10 at 4. On August 19, 2024, the BIA remanded the case back to the immigration judge to "specifically address[]" Sow's "credibility, whether the objective evidence satisfied his burden of proof, what is likely to happen to [him] on return to Sierra Leone, whether what is likely to happen constitutes torture as a matter of law and whether such torture would be inflicted by or with the consent or acquiescence of a government official." Dkt. No. 4-1 at 24. In the meantime, on April 5, 2024, an immigration judge denied Sow's bond request, finding

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

that the government showed "by clear and convincing evidence that [Sow] is a danger to the community." Dkt. No. 11-1 at 2.

On October 2, 2024, Sow had another merits hearing before the immigration judge, who again granted deferral of removal under the Convention Against Torture. Dkt. No. 4-1 at 22–30. The immigration judge issued a detailed written opinion describing his basis for granting Sow's application. *Id*. DHS again appealed to the BIA, which again sustained the appeal and remanded the proceedings, this time because it found that the immigration judge "clearly erred in finding [Sow] credible given multiple credibility concerns and the lack of reasonably available corroboration." *Id.* at 42; *see also id.* at 44 (remanding with instructions to "reassess [Sow]'s credibility"). In the meantime, on February 7, 2025, Sow was again denied bond as an immigration judge found him to be a danger to the community by clear and convincing evidence. Dkt. No. 11-2 at 2. On September 15, 2025, following the second remand, the immigration judge again granted deferral of removal under the Convention Against Torture, "reiterat[ing] [his] previous decision, again finding [Sow] credible and that he met his burden to establish that he will more-likely-than-not be tortured upon removal to Sierra Leone." Dkt. No. 4-1 at 46. DHS again appealed this decision to the BIA, and the appeal remains pending at this time.

"ICE has continued to seek removal of [Sow] to a third country in the event the BIA dismisses [DHS]'s appeal." Dkt. No. 10 at 5. ICE claims that it was "able to secure travel arrangements to remove [Sow] to Eswatini as of March 10, 2026," but "cancelled such travel arrangements because of the pending habeas petition and BIA appeal." *Id.* ICE has relocated Sow numerous times, and he has been detained at the Northwest ICE Processing Center ("NWIPC") since March 24, 2025. *Id.* at 5.

On February 20, 2026, Sow filed his petition for a writ of habeas corpus. Dkt. No. 4. On March 4, 2026, he filed a motion to appoint counsel, Dkt. No. 7, which the Court granted on March

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

11, 2026, Dkt. No. 13. On March 6, Respondents[2] filed their return, and on March 11, Sow filed his reply. Dkt. Nos. 9, 14. The Court ordered the parties to file supplemental briefing on "whether Sow's detention is indefinite under *Zadvydas*" considering that the reason for the delay in removal is the pending withholding-only proceedings. Dkt. No. 16 at 2. Supplemental briefing was complete on April 10, 2026. Dkt. Nos. 17–18.

## II.    DISCUSSION

Sow asserts that his "continued detention without any reasonable prospect of removal to Sierra Leone in the reasonably foreseeable future violates the fifth amendment's due process clause." Dkt. No. 4 at 5. He avers that he has been held for over two years even though he "presents no risk to the community nor a flight risk or [a risk] to not comply with a removal order such that the order of the removal period will be tolled." *Id.* at 2, 4–5. He also argues that his detention without an additional bond hearing has violated ICE's own policies and his due process rights. *Id.* at 25, 38–42. Sow seeks (1) "release on conditional basis," or alternatively, a bond hearing "before a neutral arbiter that complies with singh and considers alternative to detention"; (2) "an order preventing removal to third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings"; and (3) "an order barring removal to any third country pursuant to DHS's punitive removal policy." *Id.* at 4, 18–22.

The parties agree that 8 U.S.C. § 1231 governs Sow's detention. *See* Dkt. No. 4 at 4–5; Dkt. No. 9 at 1–3.

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 4

**A.      Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). To ensure a noncitizen's presence for removal and to protect the community from noncitizens who may present a danger, Congress mandated detention during the

removal period. 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. 8 U.S.C. § 1231(a)(6). Although there is no statutory time limit on detention pursuant to Section 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. "After this 6-month period, once the [non-citizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Section 1231(a)(6) thus "requir[es] release from long-term detention" when there is no significant likelihood of removal in the reasonably foreseeable future. *Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018) (citation modified).

**B.    Sow is Not Entitled to Relief Under *Zadvydas***

Sow has been detained in immigration custody since September 18, 2023. Dkt. No. 10 at 3. Respondents acknowledge that he has a final order of removal and cannot be held indefinitely, but argue that his continued detention is lawful because removal is foreseeable—"[u]nlike the *Zadvydas* case, Petitioner is still litigating his case." Dkt. No. 9 at 5. As Respondents describe it, the reason ICE has not been able to remove Sow is that "proceedings are ongoing and there is no final decision regarding deferral to Sierra Leone"; but "[o]nce the case concludes, ICE has the demonstrated ability to remove [Sow] to Sierra Leone . . . if the deferral of removal is denied," and "[i]f [he] is granted deferral of removal to Sierra Leone, ICE believes Eswatini will take

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 6

[him]." *Id.* at 5–6. In other words, "the proceedings are definite and will come to an end," *id.* at 6, so continued detention is permissible. The Booth Declaration states that "ICE was able to secure travel arrangements to remove Petitioner to Eswatini as of March 10, 2026," but "ICE cancelled such travel arrangements because of the pending habeas petition and BIA appeal." Dkt. No. 10 at 5. Sow disputes Respondents' characterization, arguing that there is no significant likelihood of his removal because Respondents have "not shown that [they] will prevail in a *third* appeal of his CAT relief or that Eswatini (or any other country) will accept him." Dkt. No. 14 at 2.

Section 1231(a)(6) explicitly provides that a noncitizen like Sow who has been ordered removed pursuant to "section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title . . . may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). The regulations further confirm that the Department of Homeland Security "may continue a[ noncitizen] in custody beyond the removal period" who has been "convicted of one or more aggravated felony offenses," including noncitizens "granted withholding of removal under section 241(b)(3) of the Act or withholding or deferral of removal under the Convention Against Torture." 8 C.F.R. § 241.4(a), (a)(1), (b)(3). As previously stated, it is undisputed that Sow is removable under 8 U.S.C. § 1227(a)(2), that he is subject to a final order of removal, and that he has been granted withholding of removal; therefore, the government has discretion to continue his detention. *Akintuyi v. Bondi*, No. 25-CV-3476-ABA, 2026 WL 1172798, at *1 (D. Md. Apr. 30, 2026).

Furthermore, all federal appellate courts who have considered the issue have concluded that relief under *Zadvydas* is unavailable where delay in removal is caused by ongoing litigation. As the Fourth Circuit put it:

> Critically, withholding-only proceedings are *finite.* In the ordinary course, they continue only for such time as a determination can be made concerning the legality of removing the [noncitizen] to the designated country. If the [noncitizen] fails to obtain withholding-only relief, and absent any other diplomatic or logistical barriers, then the government can—and must—promptly carry out the

[noncitizen]'s removal to the designated country. If the [noncitizen] prevails, then the government may still remove the [noncitizen] to another country, assuming it continues to pursue removal at all. In either case, however, the withholding-only proceedings *end*. And if the withholding-only proceedings have a definite ending point, then so too must the detention *pending* the resolution of those proceedings. As such, ongoing withholding-only proceedings, even lengthy ones, simply do not present the same risk of "indefinite and potentially permanent" detention at issue in *Zadvydas*. Stated differently, ongoing withholding-only proceedings do not, standing alone, cast doubt on the foreseeability of a[ noncitizen]'s removal in the future.

*Castaneda v. Perry*, 95 F.4th 750, 757–58 (4th Cir. 2024) (citation omitted). Similarly, the First Circuit in *G.P. v. Garland* held that a noncitizen who was "being detained because his CAT proceedings remain[ed] pending" was not in removable-but-unremovable limbo because "once [his] withholding-only proceedings end[ed], he w[ould] either be removed to the Dominican Republic or the government w[ould] have to begin the process of finding a different country to accept him." 103 F.4th 898, 902 (1st Cir. 2024) ("In concluding that G.P. is not entitled to habeas relief, we align ourselves with all of the circuit courts that have considered analogous circumstances."). The Sixth Circuit in *Martinez v. Larose* likewise found that removal was "reasonably foreseeable" even where the noncitizen's withholding-only proceedings would have to "wind back through the immigration courts" if he prevailed, because "[i]f [the noncitizen] d[id] not prevail in his pending actions before [the Sixth Circuit] and the BIA, nothing should impede the government from removing him to El Salvador," and if the noncitizen did prevail at the Sixth Circuit or BIA, he could "refile his § 2241 petition and argue at that point that there is no significant likelihood of removal in the reasonably foreseeable future." 968 F.3d 555, 565 (6th Cir. 2020). The Tenth Circuit came to the same conclusion in *Soberanes v. Comfort*: where the delay in removal is "directly associated with a judicial review process that has a definite and evidently impending termination point," the noncitizen's detention "is clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*[.]" 388 F.3d 1305, 1311 (10th

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 8

Cir. 2004). Finally and most significantly, the Ninth Circuit applied *Zadvydas* in a case where the noncitizen was detained under Section 1226(a), concluding that although the noncitizen's removal "ha[d] certainly been delayed by his pursuit of judicial review of his administratively final removal order, he [wa]s not stuck in a 'removable-but-unremovable limbo.'" *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008).

As in *Castenada*, *G.P.*, and *Prieto-Romero*, there is no dispute regarding Sow's removability or the government's ability to remove him to his country of origin or a third country. Thus, "[i]f [Sow] does not prevail in his withholding-only proceedings, then nothing stands in the way of his prompt removal to [Sierra Leone]," and "if he does succeed, nothing would prevent ICE from removing him to another country." *Castaneda*, 95 F.4th at 758. Sow has also not shown any evidence of bad faith or undue delay on the part of the government, *see G.P.*, 103 F.4th at 902; indeed, DHS has prevailed at the BIA after every appeal to date. That does not create a "removable-but-unremovable limbo" because "ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable." *Castaneda*, 95 F.4th at 758. "To reach a contrary result would be to go against th[e] clear weight of authority[.]" *Id.* at 759.

C.      **Sow is Entitled to a Bond Hearing**

Sow contends that his Fifth Amendment rights have been violated by the lack of a bond hearing since February 7, 2025, despite regulations "allow[ing] detainees to seek [an] additional bond hearing before an [immigration judge] whenever they experience a material change of circumstances warranting a redetermination of custody status." Dkt. No. 4 at 24 (citing 8 C.F.R. § 1003.19(e)). He notes that since his last bond hearing, the immigration judge again found that he is entitled to CAT protection. *Id.* Respondents argue that (1) the two bond hearings Sow has received—at which the government twice carried its burden to show by clear and convincing evidence that he was a danger to the community—constitute "substantial procedural safeguards,"

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 9

(2) Sow did not appeal the bond determinations, and (3) "[d]ue process does not require a third hearing[.]" Dkt. No. 9 at 7–8.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). It is undisputed that Sow has an interest in freedom from physical restraint. *See* Dkt. No. 9 at 6. To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

With respect to the first factor, as discussed above, Sow has an interest in remaining out of immigration detention. This factor weighs in his favor.

Turning to the second factor, Sow is correct that DHS's own regulations require at least annual custody reviews (and earlier reviews if circumstances materially change). 8 C.F.R. §§ 241.4(k)(2)(iii)–(iv); *see also* Dkt. No. 14 at 14. During those reviews, officials must consider both "[f]avorable factors" (such as "close relatives residing here lawfully") and unfavorable factors (such as "flight risk" and "[p]rior immigration violations"). 8 C.F.R. § 241.4(f). The noncitizen has the right to submit evidence, to use an attorney or other representative, and, if appropriate, to seek a government-provided translator. 8 C.F.R. §§ 241.4(h)(2) and (i)(3)(i)–(ii). Respondents do not contest Sow's allegation that they have failed to follow these regulations. *See generally* Dkt. No. 9. Even assuming without deciding that the applicable regulations provide sufficient protection

from erroneous deprivation, ICE's "failure to follow its own regulations . . . demonstrate[s] a substantial risk of erroneous deprivation." *Caceres v. Joyce*, 813 F. Supp. 3d 407, 417 (S.D.N.Y. 2025). This factor weighs in favor of Sow.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. "These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025). Considering the government's failure to follow its own regulations requiring periodic bond hearings, the Court can identify no reason that an individualized hearing would interfere with the government's interests. Therefore, the Court finds that this factor too weighs in favor of Sow.

Because the government has refused to follow its own regulations and now insists that "[d]ue process does not require [another] hearing" despite its regulations clearly requiring otherwise, Dkt. No. 9 at 7, the Court finds that Sow is entitled to a hearing before an immigration judge at which the government is required to prove by clear and convincing evidence that he is a danger to the community or a flight risk.

**D.      The Court Grants in Part and Denies in Part Sow's Request for Certain Due Process Protections Relating to any Third Country Removal**

Sow requests an order prohibiting Respondents from removing him to a third country "without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings[.]" Dkt. No. 4 at 7; *see also id.* at 14–18. Sow argues that such an order is necessary because "[t]he government has arranged for third countries to receive deportees and imprison them on arrival, possibly indefinitely and often in abhorrent conditions." *Id.* at 36. He adds that "Respondents['] policy for third country removals . . . directs ICE agents to remove individuals to third countries with . . . no diplomatic assurances" and "flagrantly insufficient notice (9-24 hours) and opportunity to respond, in violation of the statute, regulations, and [F]ifth Amendment[]." *Id.* at 35. Sow also expresses concern that if he is removed to Eswatini, he "may not have domestic legal protections against being forwarded to Sierra Leone, a country to which the U.S. government is prohibited from sending him." Dkt. No. 14 at 7.

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Id.* at 941–42. A plaintiff seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006). "Once a

[constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). Importantly, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Respondents aver only that Sow's arguments about third country removal are "speculative" because "ICE is waiting for final decision on [his] withholding of removal claim before taking action on potential third country removal," Dkt. No. 9 at 8, and "ICE cancelled . . . travel arrangements [to Eswatini] because of the pending habeas petition and BIA appeal," Dkt. No. 10 at 5. Sow replies that his concerns are not speculative because "ICE intends to send [him] to Eswatini if the government prevails in its appeal of his CAT deferral, and ICE allegedly 'secure[d]' travel arrangements' to Eswatini in March." Dkt. No. 14 at 7.

Respondents' efforts to secure travel arrangements for Sow's removal to Eswatini and representation that ICE intends to remove him to Eswatini after the administrative proceedings conclude (should DHS not prevail in the withholding-only proceedings) make this issue ripe for the Court's consideration.[3]

The Immigration and Nationality Act dictates the countries to which a noncitizen may be removed after a final order of removal is issued. *Jama v. ICE*, 543 U.S. 335, 338 (2005); *Dzyuba*

---

[3] Respondents do not contend that Sow's third country removal claim is foreclosed by the litigation in *D.V.D. v. U.S. Dep't of Homeland Sec.,* No. 25-cv-10676 (D. Mass.), and for the reasons laid out in *Francisco Lorenzo v. Bondi*, No. 2:25-CV-02660-LK, 2026 WL 237501, at *7–8 (W.D. Wash. Jan. 29, 2026), the Court finds that the claim is not precluded.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13

*v. Mukasey*, 540 F.3d 955, 956 (9th Cir. 2008) (per curiam). In order of priority, a noncitizen may be removed to (1) a country designated by the noncitizen; (2) a country of which the noncitizen is a subject, national, or citizen; or (3) a country with which the noncitizen has a lesser connection. 8 U.S.C. § 1231(b)(2). If the above options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept the [noncitizen] into that country." 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama*, 543 U.S. at 341.

The government is prohibited from removing a person to a third country where they may be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A) provides for withholding of removal "if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." And the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 113, prohibits removal of a noncitizen to a country where he is likely to be tortured. *See* 8 CFR §§ 208.16–208.17, 1208.16–1208.17; *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021). "Withholding of removal and CAT protection only restrict *where* the Government may remove a noncitizen to, not *whether* the noncitizen is subject to removal." *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025). Thus, a noncitizen's removal order remains valid and enforceable, albeit not to the identified country or countries of risk. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(f); *Johnson*, 594 U.S. at 536; *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

Sow avers that Respondents are "removing individuals to third countries, without first following the procedures in the INA for designation and removal to third country and without

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 14

providing fair notice and an opportunity to contest the removal in immigration court." Dkt. No. 4 at 30. Sow is concerned that he will be removed without process to a third country where he may be tortured, *id.* at 30–32, especially considering the Government's guidance about the process provided prior to third country removals, *see id.* at 31; *see also* Dkt. No. 14 at 9. Respondents do not contest Sow's assertions. *See generally* Dkt. No. 9.

For the reasons described in *Francisco Lorenzo*, 2026 WL 237501, at *9–10, the Court finds that the policies governing Respondents' planned removal of Sow to a third country do not comport with due process. *See, e.g.*, *Escobar v. Chestnut*, No. 1:25-CV-01801-DJC-EFB, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional and contrary to Ninth Circuit precedent." (collecting cases)). Considering ICE's efforts to remove Sow to Eswatini, Dkt. No. 10 at 3–5, and Respondents' constitutionally deficient directives governing third country removal, Sow has demonstrated some "cognizable danger" of removal to a third country with insufficient due process, *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003), and remedies such as monetary damages are clearly "inadequate to compensate for that injury," *eBay*, 547 U.S. at 391. Sow is therefore entitled to injunctive relief requiring notice and a meaningful opportunity to respond in compliance with his statutory and due process rights. Because the requested injunction seeks only to require Respondents to abide by established legal precedent, they incur no significant hardship and the "public interest would not be disserved by a permanent injunction." *Id.*

E.    **The Court Otherwise Denies Sow's Request for Permanent Injunctive Relief**

Sow requests "an order barring removal to any third country pursuant to DHS's punitive removal policy." Dkt. No. 4 at 7. He avers that "[t]he risk of third-country deportation is not

remotely speculative" because "[p]eople with Mr. Sow's exact profiles have experienced punitive deportation without due process as recently as last month." Dkt. No. 14 at 11.

Although Sow has established that Respondents' current procedures regarding third country removals are inadequate, that issue is remedied by the injunction granted above, and Sow has not shown that *all* third country removals are punitive. The Court therefore denies this request. Should it become apparent that Respondents intend to institute punitive removal against Sow, he may seek relief at that time.

### III.    CONCLUSION

For the reasons stated above, the petition writ of habeas corpus, Dkt. No. 4, is GRANTED IN PART and DENIED IN PART. The Court ORDERS the following relief:

1.    Respondents must provide Sow with a bond hearing before an immigration judge within seven days of the date of this Order. At the hearing, the government bears the burden of proving by clear and convincing evidence that Sow is a danger to the community or a flight risk. Respondents must ensure that the hearing is recorded.

2.    If a bond hearing is not provided within seven days of the date of this Order, Sow shall be released from ICE custody immediately on appropriate terms. Respondents must file a Status Report with the Court either confirming that Sow received a bond hearing— and the results of that hearing—or otherwise confirming his release by May 15, 2026.

3.    If the immigration judge does not order Sow released, Respondents are prohibited from transferring Sow from this jurisdiction—i.e., the Western District of Washington— for seven days following the immigration judge's decision, unless such transfer is necessary for medical evaluation, medical treatment, release, or extenuating circumstances.

4.      Respondents shall not remove or seek to remove Sow to a third country without affording him meaningful notice and an opportunity to respond in conformity with 8 U.S.C. § 1231(b) and due process.

5.      Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr.* Ctr., No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context).

Dated this 5th day of May, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 17