UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDULAI SOW,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN et al.,<br><br>Respondents. | CASE NO. 2:26-cv-00617-LK<br><br>ORDER DENYING MOTION TO ENFORCE |

This matter comes before the Court on Petitioner Abdulai Sow's Motion to Enforce Judgment. Dkt. No. 23. For the reasons set forth below, the Court denies the motion.

## I. BACKGROUND

On May 5, 2026, this Court granted in part and denied in part Sow's petition for a writ of habeas corpus. Dkt. No. 20. The Court ordered Respondents to provide Sow with a bond hearing before an immigration judge within seven days of the date of the Court's order and stated that "[i]f a bond hearing is not provided within seven days of the date of this Order, Sow shall be released from ICE custody immediately on appropriate terms." *Id.* at 16. The Court entered judgment the same day. Dkt. No. 21.

On May 13, 2026, Respondents notified the Court that an Immigration Judge ("IJ") conducted a bond hearing for Sow on May 11, 2026 and denied his request for release on bond.

Dkt. No. 22 at 1. Sow's appeal of that decision was due on June 10, 2026. *Id.* He did not appeal. Dkt. No. 28 at 2. Instead, on June 11, 2026, he filed this motion to enforce the Court's judgment. Dkt. No. 23.

## II. DISCUSSION

In his motion, Sow avers that "the bond hearing provided to [him] was not before a neutral arbiter, did not put the government to its burden to show by a clear and convincing standard that [he] was a danger, and disregarded [his] evidence," and consequently, "it did not fulfill the terms of the Court's order." *Id.* at 1. He contends that "because the required bond hearing was never provided," immediate release is appropriate. *Id.* Respondents argue that Sow's motion should be denied because he received "an individualized bond hearing where the Government justified by clear and convincing evidence that his detention should continue." Dkt. No. 28 at 2. Respondents note that "[c]ourts have inherent jurisdiction to enforce their judgments," but note that a motion to enforce should be denied if "the petitioner has received all relief required by that prior judgment." *Id.* at 3 (citation modified).

### A. Jurisdiction

"When a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional (or other federal) rights." *Harvest v. Castro*, 531 F.3d 737, 741 (9th Cir. 2008). Although "courts originally confined habeas relief to orders requiring the petitioner's unconditional release from custody," in modern practice "courts employ a conditional order of release in appropriate circumstances, which orders the State to release the petitioner unless the State takes some remedial action[.]" *Id.* at 741. In those instances, "the district court ha[s] authority to review compliance with [the] earlier order conditionally granting habeas relief." *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011)); *see also* Fed. R. Civ. P. 70(a) ("If a judgment requires a party . . . to perform any other specific act and the party fails to comply

within the time specified, the court may order the act to be done[.]"). And "if a state 'fails to cure the constitutional error, *i.e.*, when it fails to comply with the order's conditions, . . . the conditional grant of habeas corpus *requires* the petitioner's release from custody.'" *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020).

In general, the Court does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

However, Section 1226(e) does not "strip federal courts of 'traditional habeas jurisdiction.'" *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). Similarly, a hearing conducted pursuant to a district court's order requiring the government to be held to a certain legal standard is reviewable for compliance with the court's order. *Id.* at 784. In other words, Section 1226(e) does not bar review of pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id.* at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of discretion. *Id.* at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the IJ "applied the correct legal standard." *Id.* at 785 (internal quotation marks omitted). Thus, the Court has jurisdiction to review whether the IJ applied the required standard and complied with the Court's order.

**B. Respondents Complied with the Court's Order Conditionally Granting the Writ**

Assuming without deciding that exhaustion of administrative remedies is not warranted, Respondents complied with the Court's order requiring them to "provide Sow with a bond hearing before an immigration judge within seven days of the date of this Order" where "the government bears the burden of proving by clear and convincing evidence that Sow is a danger to the community or a flight risk." Dkt. No. 20 at 16.[1]

Sow contends that the IJ (Judge John Odell) "was not acting as a neutral arbiter" because he "assisted DHS in meeting the government's burden by independently seeking evidence," asked for information about Sow's criminal convictions, expressed skepticism about Sow's stated goal to work with children or youth despite his criminal convictions, and "mischaracterized" an item found in Sow's cell as a "shank." Dkt. No. 23 at 3–6; *see also* Dkt. No. 24-1 at 14 (IJ describing contraband found in Sow's cell as a "piece of metal wrapped in two pen caps wrapped in cellophane with a piece of string attached");[2] Dkt. No. 24-1 at 14 (IJ stating that "in 2019 [Sow] . . . pled guilty to attempt to promote prison contraband in the first degree. He had like a metal, like shank or something like that, sentenced to one and a half years to three years indeterminate."); *id.* at 16 (IJ asking, "Is this—but this ['counseling, anger management' 'obtained' by Sow] is before he got caught with a shank in prison?" and counsel responding, "Yes, Your Honor."). Respondents counter that the IJ required the government to meet its burden by clear and convincing

[1] To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra,* 24 I. & N. Dec. 37, 40 (BIA 2006)).

[2] *See also* Dkt. No. 24-2 at 51, 61 (describing the item and setting forth the 2019 guilty plea).

evidence, and the government did so, presenting evidence that Sow "remains a danger as [he] has several violent felony convictions, and in fact was convicted of harassment of a prison employee and plead guilty to contraband while he was in prison." Dkt. No. 28 at 5. Respondents also contend that the IJ considered Sow's "rehabilitative evidence," including his desire to work with children in the future, even though the IJ "questioned the logistical feasibility" of that goal in light of Sow's convictions. *Id.* at 6.

The record does not support Sow's contention that the government failed to provide a bond hearing before a neutral arbiter. During the hearing, after the government's counsel stated that Sow had "been convicted of some very serious crimes," the IJ asked about those crimes, "trying to understand the background." Dkt. No. 24-1 at 7–8, 11. The IJ's questions about those crimes and clarifications of the record are routine judicial functions and do not reflect bias or assistance to the government.[3] Moreover, regardless of the characterization of the contraband found in Sow's cell, the IJ pointed out that Sow was caught with it *after* he was involved with a young adult workforce program, which does not "speak very well about his rehabilitation." Dkt. No. 24-1 at 16. The record shows that the IJ considered Sow's rehabilitative evidence and did not ignore it as Sow contends. Dkt. No. 31 at 4–5.

In his reply brief, Sow argues that Respondents' danger-related argument based on his prior convictions "denies the relevance of all of [his] rehabilitation evidence and assumes someone's conduct as a teenager will persist even as the person matures and as the risk of such behavior skyrockets (in the form of deportation to Sierra Leone)[.]" Dkt. No. 31 at 4. Sow seems to urge the

[3] The IJ's questioning regarding Sow's criminal convictions was in response to the government's assertion that Sow "has been convicted of some very serious crimes," and he appropriately held the government to its burden to establish dangerousness. Dkt. No. 24-1 at 7–8, 14 (asking "What are the crimes?"; going through each conviction in the record and stating "It's not [Sow's] burden here" in response to the government's lack of knowledge of the particular type of prison employee Sow was convicted of harassing; the government ultimately pointed to the place in the record where the harassment charge was located). This evidence was already in the record submitted to the IJ before the hearing. *Id.* at 6–7.

Court to reweigh the rehabilitative evidence or weight it more heavily than his convictions, but the Court "cannot reweigh evidence" and instead determines whether the IJ "applied the correct legal standard." *Martinez*, 124 F.4th at 785. The IJ applied the correct standard and concluded that the government showed "by clear and convincing evidence that [Sow] is a danger." Dkt. No. 24-1 at 21.[4]

## III. CONCLUSION

For the foregoing reasons, Sow's motion to enforce is DENIED. Dkt. No. 23.[5]

Dated this 17th day of August, 2026.

Lauren King
United States District Judge

[4] There is no requirement that a judge specifically use the phrase "highly probable" in a clear and convincing finding, as Sow seems to suggest. Dkt. No. 23 at 9–10.

[5] The Court cannot find on this bare record that "the immigration courts, and the Tacoma court particularly, are systematically biased against noncitizens," Dkt. No. 31 at 5, as Sow urges based almost entirely on articles from various media outlets, Dkt. No. 23 at 6–8.